**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**FILED**

May 29, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**vs.)   No. 18-0165**   (BOR Appeal No. 2052109)
(Claim No. 2016021536)

**CLARK GUMP,**
**Claimant Below, Respondent**

**MEMORANDUM DECISION**

Petitioner, Murray American Energy, Inc., Aimee Stern, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Clark Gump, by M. Jane Glauser, his attorney, filed a timely response.

The issues on appeal are the compensability of an additional diagnosis, medical treatment, and payment of temporary total disability benefits. On November 7, 2016, the claims administrator held the claim compensable for strain of muscle, fascia, and tendon of the lower back and denied lesion of lateral popliteal nerve, left lower limb, as a compensable condition. On December 12, 2016, the claims administrator held the claim compensable for strain of muscle, fascia, and tendon of lower back and denied acute peroneal nerve palsy. The claims administrator also denied authorization for evaluation and treatment with Ronald Hargraves, M.D., in a separate decision on December 12, 2016. On September 13, 2016, the claims administrator closed the claim for temporary total disability benefits. The Office of Judges affirmed the claims administrator's November 7, 2016, Order in its July 25, 2017, Order. It also reversed the September 13, 2016, and both December 12, 2016, decisions. The Office of Judges' Order was affirmed by the Board of Review on February 1, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Gump was carrying a two hundred pound beam on February 23, 2016, when he felt pain in his back. When he sought treatment in the emergency room at Wheeling Hospital for complaints of back pain that same day, Mr. Gump reported intermittent paresthesias of the bottoms of both feet and a history of back pain. Lumbar spine x-rays were normal. Mr. Gump was diagnosed with acute lumbar strain. On February 26, 2016, Mr. Gump was seen by Ross Tennant, FNP, with Corporate Health. Mr. Gump provided a history of a lumbar fracture eighteen years prior, which had fully healed, as well as chronic low back pain, which he managed with medication. Mr. Gump reported pain and muscle spasms in his low back with pain radiating down both legs. On examination, Mr. Gump's lumbar spine was tender to palpation and his range of motion was significantly reduced. Mr. Tennant diagnosed lumbar strain and requested an MRI of the lumbar spine.

The lumbar MRI was performed on March 3, 2016. It showed mild degenerative disc disease of the lower lumbar spine, no spinal stenosis, and some mild bilateral foraminal narrowing at L3-L4 and L4-L5 without evidence of nerve root contact. On March 4, 2016, Mr. Gump reported a slight improvement in the pain and discomfort in his back when he was seen for follow-up by Mr. Tennant. Mr. Gump was still experiencing pain radiating into his bilateral lower extremities as well as numbness and tingling to his feet. Mr. Tennant prescribed a Medrol Dosepak and instructed Mr. Gump to continue with physical therapy. The claim was accepted as compensable for strain of muscle, fascia, and tendon of the lower back on March 10, 2016.

Mr. Gump had a significant history of lumbar spine problems dating back to July of 1998, when Sam Vukelich, M.D., examined Mr. Gump for constant low back pain, right leg pain, and right leg turning out. Mr. Gump reported that his legs gave out on him at times. Dr. Vukelich recommended an MRI or EMG in order to see if Mr. Gump needed surgery. The EMG was completed by John Tellers, M.D., on September 17, 1998. It showed normal peroneal and posterior tibial nerve conduction and no evidence of an acute or chronic right lumbosacral motor radiculopathy, focal motor neuropathy, or myopathy.

James Valuska, M.D., performed an independent medical evaluation for a chief complaint of low back, right leg, and right wrist pain on November 30, 2000. He noted Mr. Gump was injured on June 8, 1997, when he was moving a modular home and the jack slipped, pinning Mr. Gump between the home and the foundation. Mr. Gump was diagnosed with transverse fractures of the first, second and third transverse processes. Mr. Gump reported pain radiating to his right buttock and to the posterior part of his right leg within ten days of the injury. A September 28, 1998, lumbar spine MRI showed slight degenerative changes. A second MRI showed an L4-L5 intervertebral disc bulge and a small central protrusion of the L5-S1 disc. Mr. Gump reported pain into his right buttock with tingling into the right leg and thigh. Dr. Valuska diagnosed healed fractures of the first, second, and third lumbar transverse processes and disc displacement of L1 without signs of radiculopathy.

Mr. Gump was treated by Michael Wayt, M.D., for chronic low back pain from July of 2008 through June of 2015. During that time, Dr. Wayt treated Mr. Gump two to three times per year and usually treated the chronic low back pain with injections. In December of 2008, lumbar spine x-rays showed mild degenerative changes with disc space narrowing at L4-L5 and L5-S1.

2

A January 6, 2009, MRI showed a broad based central disc protrusion. On February 4, 2009, Dr. Wayt diagnosed chronic low back pain and herniated disc at L4-L5. In September of 2013, Mr. Gump noted radicular leg pain. On March 18, 2014, Mr. Gump had numbness and radicular leg pain. In June of 2014, Dr. Wayt gave Mr. Gump an injection for a flare-up of low back pain. On June 15, 2015, Mr. Gump complained of low back pain which was aggravated by repetitive lifting at work. He had pain with palpation over the paraspinal muscles. Dr. Wayt prescribed Tramadol and Naproxen and gave Mr. Gump an injection.

After the February 23, 2016, work injury, Mr. Gump was treated by Mr. Tennant. On March 11, 2016, Mr. Gump reported that physical therapy helped to improve the pain and discomfort in his back. Mr. Tennant noted the lumbar spine was slightly tender to palpation and the hypertonicity to his spinal erector muscles was improving. Mr. Tennant diagnosed lumbar sprain and mild degenerative changes of the lumbar spine. He advised Mr. Gump to continue physical therapy. On March 25, 2016, Mr. Gump reported continued improvement and denied radicular complaints. He was not tender to palpation and the hypertonicity continued to improve. On April 1, 2016, Mr. Gump reported he had completed physical therapy and that the pain and discomfort in his back had significantly improved. Mr. Gump was nontender to palpation and the hypertonicity in his spinal erector muscles had resolved. Mr. Tennant's diagnoses remained lumbar strain and mild degenerative changes of the lumbar spine. Mr. Gump was released to return to regular duty work as of April 4, 2016.

Mr. Gump returned to see Mr. Tennant on May 19, 2016. He reported that he had returned to work on April 4, 2016, and had developed pain in his low back. He was having trouble bending over and lifting heavy objects. He also had intermittent pain radiating into his left lower leg. He denied any paresthesias. On examination, Mr. Gump was tender to palpation with hypertonicity to the spinal erector muscles. Mr. Tennant opined that he was experiencing a flare-up in his symptoms and recommended an additional six weeks of physical therapy. On May 27, 2016, Mr. Gump reported the muscle spasms in his back continued to get worse. Mr. Gump remained tender to palpation and there was significant hypertonicity noted in the spinal erector muscles. Mr. Tennant recommended continued physical therapy and an EMG of the left lower extremity.

A July 28, 2016, EMG study of the left leg suggested acute and chronic changes in the peroneal nerve, which was L4-L5 root innervention, a chronic process in the L5-S1 nerve root muscle. Mr. Gump had neuropathy involving the left peroneal nerve with minimal findings in the L5 nerve root. It was noted that Mr. Gump had an L5-S1 fusion with foraminal disease and desiccated disc most probably affecting the older back trauma since he has been in a job where he has frequent lifting. It was recommended that he consider physical therapy to work on the peroneal nerve and to continue working with his paraspinal muscles.

Mr. Gump was discharged from physical therapy on August 2, 2016, and followed up with Mr. Tennant on August 3, 2016. Mr. Tennant noted that Mr. Gump had completed physical therapy but reported no improvement in his symptoms. Mr. Tennant noted the EMG showed Mr. Gump had neuropathy involving the left peroneal nerve. However, from a musculoskeletal standpoint, Mr. Gump's symptoms had improved and he had reached maximum medical

improvement from his acute back injury. He noted Mr. Gump would need to seek treatment from his primary care physician for the peripheral injury involving the peroneal nerves.

The claims administrator suspended the claim for temporary total disability benefits on August 5, 2016, as Mr. Gump had been released to return to work. On September 2, 2016, Dr. Wayt wrote a note stating Mr. Gump should remain off of work due to an aggravation of his previous work-related injury.

Joseph Grady, M.D., performed an independent medical evaluation on September 8, 2016, for the compensable condition of strain of muscle, fascia, and tendon of the lower back. Mr. Gump reported pain in the lower back that can extend into his left buttocks and thigh. He was taking a muscle relaxer and pain reliever that had been prescribed for his previous symptoms by Dr. Wayt. Dr. Grady diagnosed lumbosacral myofascial sprain superimposed on multilevel lumbar spondylosis and the reported history of prior lumbar fractures. Dr. Grady opined that Mr. Gump had reached maximum medical improvement for the compensable condition of lower back strain. The claims administrator closed the claim for temporary total disability benefits on September 13, 2016.

Dr. Wayt completed a diagnosis update form on October 21, 2016, listing Mr. Gump's primary diagnosis as strains of the muscle of the lumbar spine and the secondary diagnosis as acute peroneal nerve palsy. Dr. Wayt did not list any clinical findings on which the diagnoses were based. Mr. Gump requested that his treating physician be changed from Corporate Health to Dr. Wayt on October 19, 2016. On October 21, 2016, Dr. Wayt completed a medical statement regarding Mr. Gump's treatment which had been prepared by Mr. Gump's attorney. Dr. Wayt noted that he was the treating physician, that based upon his examination of Mr. Gump on October 14, 2016, Mr. Gump's condition was casually related to a work injury, and that an evaluation and treatment with Dr. Hargraves should be authorized. Dr. Wayt indicated the treatment was needed for acute peroneal nerve palsy.

On October 27, 2016, the claims administrator authorized Mr. Gump's request to change his treating physician to Dr. Wayt. On November 7, 2016, the claims administrator denied the condition of lesion of popliteal nerve, left lower limb, as a compensable condition. On December 12, 2016, the claims administrator denied the condition of acute peroneal nerve palsy as a compensable condition. Mr. Gump followed-up with Dr. Wayt regarding his low back pain on December 21, 2016. Dr. Wayt noted that Mr. Gump reported he saw a neurosurgeon who felt that he had a couple of tears causing his lumbar spine symptoms. Mr. Gump reported that he was going to have injections. Dr. Wayt diagnosed low back pain and recommended Mr. Gump remain off of work and follow-up with the neurosurgeon for the injections. On December 12, 2016, the claims administrator denied authorization for an evaluation and treatment with Dr. Hargraves.

Dr. Grady prepared a supplemental report on March 15, 2017, after reviewing the medical records of Dr. Wayt from September 8, 2008, through November 1, 2016, as well as additional medical records from Ross Tennant, FNP at Corporate Health. Dr. Grady opined that

there was no diagnosis of acute peroneal nerve palsy in the EMG nerve conduction study report from July 20, 2016. There were minimal findings in the area of the left L5 nerve root, but it was not an acute root lesion. Dr. Wayt noted radicular leg pain and numbness on March 18, 2016, but when Dr. Grady evaluated Mr. Gump on September 8, 2016, there was no clear radicular or peripheral nerve abnormalities noted. In Dr. Grady's opinion, there is no specific indication of an acute peroneal nerve palsy due to the compensable work injury. Dr. Grady also opined that there was no information in the record suggesting a lateral popliteal nerve injury involving the left lower limb from the mechanism of injury. Dr. Grady opined that there was no need for a neurosurgical consultation for a strain of the muscle, fascia, and tendon of the lower back. Dr. Grady noted Mr. Gump could have chronic radicular symptoms as there was documentation of lower extremity numbness and discomfort dating back to 2013.

In its July 25, 2017, Order, the Office of Judges reversed the claims administrator's September 13, 2016, decision and ordered the payment of temporary total disability benefits from the date of the suspension through December 21, 2016, and continuing as substantiated by the evidence; affirmed the November 7, 2016, decision[1]; reversed the December 12, 2016, decision and added acute peroneal nerve neuropathy as a compensable component of the claim; and reversed the December 12, 2016, decision with directions to authorize the evaluation and treatment with Dr. Hargraves.

The Office of Judges addressed the issue of the additional compensable condition of acute peroneal neuropathy first. It found that Mr. Gump had proven by a preponderance of the evidence that he sustained an acute peroneal nerve neuropathy as a result of his work injury. In doing so, the Office of Judges relied on the initial emergency room records which showed Mr. Gump described pain and a burning sensation in his legs. The Office of Judges also relied on the July 28, 2016, EMG results which suggested the possibility of a common peroneal nerve injury. Dr. Kettler opined the EMG findings suggested acute and chronic changes in a peroneal nerve, which was L4-L5 root innervation. Dr. Wayt, Mr. Gump's family physician, also opined that the nerve problem was due to the injury. The Office of Judges then found that the conclusions of Drs. Kettler and Wayt outweighed the findings of Dr. Grady. It found that Dr. Grady's reading of the EMG was contrary to the report of Dr. Kettler. Specifically, Dr. Grady's finding that there was not an acute finding directly contradicted Dr. Kettler's finding. It also found that Dr. Grady failed to cite the findings at L4-L5. It determined that Dr. Wayt found the conditions of the peroneal nerve to be acute and the result of the injury. It also found that Mr. Gump did not always report radicular complaints. The Office of Judges found that Mr. Gump had no radicular complaints in the two years leading up to the injury and no history of neuropathy of the left peroneal nerve. It also determined that the request for authorization for a consultation with Dr. Hargraves was medically necessary and reasonable as the condition for which it was requested was compensable.

Turning to the temporary total disability benefits, the Office of Judges found that the claims administrator erred in relying on the report of Mr. Tennant. While Mr. Gump may have reached maximum medical improvement from a musculoskeletal standpoint at that time, he had

---

[1] This portion of the decision was not appealed.

not reached maximum medical improvement in regard to the peroneal nerve condition. Dr. Wayt opined that Mr. Gump was unable to work due to the nerve condition and continued to treat him. Therefore, Mr. Gump was entitled to additional payment of temporary total disability benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its opinion on February 1, 2018.

After review, we agree with the reasoning of the Office of Judges as affirmed by the Board of Review. While Mr. Gump had a significant pre-existing component to his lumbar spine problem, Dr. Wayt found the nerve problem to be related to the work injury. The Board of Review did not err when it relied on his opinion. Therefore, the additional benefits that flow from the compensability of the peroneal nerve condition, including temporary total disability benefits and an evaluation, are compensable as well.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: May 29, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker